**ZFATY | BURNS**
ISAAC R. ZFATY, State Bar No. 214987
irz@zfatyburns.com
GARRETT M. PRYBYLO, State Bar No. 304994
gp@zfatyburns.com
660 Newport Center Drive, Suite 470
Newport Beach, CA 92660
Telephone: (949) 398-8080
Facsimile: (949) 398-8081

Attorneys for Plaintiffs, SOCAL
RECOVERY, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| SOCAL RECOVERY, LLC., a California limited liability company;<br><br>                    Plaintiff,<br><br>          vs.<br><br>CITY OF COSTA MESA, a municipal corporation; and DOES 1 – 100;<br><br>                    Defendants. | Case No.:<br>Assigned for all Purposes to:<br><br><br>**COMPLAINT** |

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

**COMPLAINT**

# I. INTRODUCTION

1.     Plaintiff – a providers of housing for adults in recovery from drug and alcohol addiction– sues the City of Costa Mesa claiming that the City engages in a pattern or practice of discrimination against them on the basis of disability in violation of the Fair Housing Act, Americans with Disabilities Act, the Civil Rights Act of 1871, and related state laws.  Plaintiff alleges that the City unlawfully interferes with their operation, and occupancy of dwellings for disabled persons in recovery and otherwise makes unavailable or denies housing because of disability.

# II. JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 3613, 42 U.S.C. § 1983, and 42 U.S.C. § 12133.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's additional claims under state law because Plaintiff's state law claims relate to Plaintiff's federal law claims, arise out of a common nucleus of operative facts, and form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper because plaintiff's claims arise from unlawful conduct occurring in Orange County, California, and because the properties that are the subject of this action are located in Orange County, California.

# III. PARTIES

4.     Plaintiff SoCal Recovery, LLC ("SoCal") is a California limited liability company.  SoCal owns and operates several dwellings in Costa Mesa for persons in recovery.  Each is a "dwelling" under the Fair Housing Act (FHA), 42 U.S.C. § 3602(b), and a "housing accommodation" under Fair Employment and Housing Act (FEHA), Government Code § 12927(d).

5.     Defendant City of Costa Mesa is a general law city, established and organized under the laws of the State of California.  It is a public entity under the Americans with Disabilities Act, 42 U.S.C. § 12131, a program or activity receiving federal financial assistance under the Rehabilitation Act, 29 U.S.C. §

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 1 -
**COMPLAINT**

794(a), and a person under 42 U.S.C. §§ 1983, 1985(3), 1986 and 3602(d). The City is responsible for the acts of its agents and employees, including enactment and enforcement of its zoning code.

## IV.  FACTUAL ALLEGATIONS

### A. City of Costa Mesa

6.      The City of Costa Mesa, home of the Orange County Fairgrounds and South Coast Plaza, is located 40 miles south of Los Angeles and borders Santa Ana, Newport Beach, Huntington Beach, Fountain Valley and Irvine. Since its incorporation in 1953, Costa Mesa has grown rapidly from a small, semi-rural farming community of 16,840 to a suburban community of 112,000.  Of its 42,120 dwelling units, just under 10% are occupied by persons with disabilities and more than 60% are rental units.

7.      Defendant City of Costa Mesa is established as a general law city; its policy-making authority is vested in the city council and other city officers or employees as provided by local law.  Govt. Code § 36501.  It is organized as a city manager form of municipal government.  Govt. Code §§ 34851-34859; CMMC 2-97.

8.      The city municipal code confers broad powers and duties on the city manager, CMMC 2-97, who is responsible for the City's compliance with state law and the enforcement of local laws, CMMC 2-114, empowered to direct and control city officers and employees, CMMC 2-115, including the dismissal of those officers and employees, except for the city attorney or treasurer, CMMC 2-116. Under the municipal code, the city manager may delegate his powers and responsibilities to other employees or officers.  CMMC 1-9.  Pursuant to these local laws, Costa Mesa's city manager, commonly known as the City's chief executive officer, has delegated his powers and duties to enforce the City's official policy and ordinances regarding group homes, including sober living homes, to the Assistant Chief Executive and the Assistant Development Services Director among others.

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 2 -
**COMPLAINT**

9.     Pursuant to 42 U.S.C. § 5304(b)(2), the City – as a recipient of federal community development funds – certifies to the Secretary of the United States Department of Housing and Urban Development that it "will affirmatively further fair housing."  Pursuant to California Government Code § 11135, the City – as a recipient of state funds – certifies that it will provide "full and equal access to the benefits" of its programs or activities.

**B. The City's Zoning Powers and Regulations**

10.     The Zoning Code of the City of Costa Mesa, Title 13 of the Costa Mesa Municipal Code (CMMC), classifies and regulates land uses and structures within the City.  The Zoning Code establishes geographic districts including residential, commercial, business and industrial districts and prescribes land uses and structures that may lawfully locate within each district. CMMC §§ 13-20, 13-30.

### 1.   The City's Residential Districts

11.     For dwellings, the Zoning Code establishes several types of residential districts, including single-family (R-1), and multiple-family medium density, (R2-MD), multiple-family high density (R2-HD), and highest density, multiple-family residential district; (R-3).  CMMC § 13-20.

12.     In every residential district, the Zoning Code regulates the nature of dwellings and the size of dwelling lots.   For example, within Single-Family Residential Districts (R-1), one detached, single-family dwelling may be built on one lot, with a minimum lot size of 6,000 square feet, and a maximum density of 7.26 dwelling units per gross acre. CMMC § 13-20(a). Within Multifamily Residential Districts (R-3), one apartment building may be built on one lot, with a minimum lot size of 12,000 square feet, and a maximum density of 20 dwelling units per gross acre. CMMC § 13-20(d).

13.     In every residential district, the City regulates the number of persons who may occupy any dwelling based on the dwelling's size and configuration. As required by California Health & Safety Code § 17922(a)(1), the City enacted and

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

**COMPLAINT**

enforces the Uniform Housing Code (UHC).  Section 503(b) of that code permits occupancy of a dwelling by two persons in each habitable room with a minimum of 120 square feet of floor area, requiring an additional 50 square feet for each occupant in excess of two.  The UHC's occupancy limitation applies to every dwelling located in Costa Mesa regardless of zoning district.   It establishes a citywide, uniform standard that applies to single family dwelling as well as apartment units.

14.    In every residential district, the City also regulates the behavior of residents.   It imposes a citywide, uniform set of restrictions and prohibitions governing the conduct and activities of any person located within any residential district in Costa Mesa.   The City regulates noise (CMMC § 13-280), public drinking (CMMC § 20-4[g]), parking and storage of vehicles (CMMC § 20-6[c]), parking inoperable vehicles in driveways (CMMC § 20-4[k]), storage of construction materials (CMMC § 20-4[o]), rubbish in driveways (CMMC § 20-3[e]), weeds (CMMC § 20-3[d]), dead grass (20-13[f]), chipped paint (CMMC § 20-7[e]), keeping a messy yard (CMMC § 20-12[aa]), big walls and small fences (CMMC § 20-7[k]), barking and stray dogs (CMMC §§ 3-8, 3-9), noisy cats (CMMC § 3-16), keeping livestock, including bees (CMMC §§ 3-13, 3-18), "harboring" more than five pets of any kinds in a dwelling (CMMC § 3-14), or slaughtering any of them, except for rabbits and birds (CMMC § 3-170), riding an "unlicensed" bicycle (CMMC § 4-3), having a dirty or torn canopy (CMMC § 20-9), or a bulging fireplace (CMMC § 20-12[b]), or even a barbeque on a rooftop (CMMC § 20-12[p]).

15.    The City exercises plenary power to abate every conceivable type of nuisance and zoning code violation that arises in its residential districts.  It authorizes a wide variety of officials to issue notices of violation or citations for every possible impingement on municipal tranquility.  The remedies at the disposal of the City range from administrative procedures to criminal penalties, including punishment by fine or imprisonment CMMC § 1-33.

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 4 -
**COMPLAINT**

### 2. The City's Zoning Classification Based on Household's Disability Status

16.   To implement its discriminatory policy, the Zoning Code sorts each household located in an R-1 district into one of three classifications.

17.   If the household is comprised of nondisabled persons, then it may be classified as a single housekeeping unit.  CMMC § 13-6.  As a single housekeeping unit, a household is free to occupy a dwelling located in any R-1 district unmolested by the City.  CMMC § 13-30.  But if the household is comprised of disabled persons, then the City imposes limitations, restrictions, and requirements on that household.

18.   The Zoning Code divides households comprised of disabled persons into two groups.  If the disabled household is state-licensed, then it is classified as a Resident Care Facility (RCF).   CMMC § 13-6.  Once classified as an RCF, the City subjects the RCF household to a discriminatory occupancy limitation capping the number of disabled persons who may occupy a dwelling – regardless of dwelling size or configuration – at a number far less than permitted in any other dwelling (occupied by nondisabled persons) under the Uniform Housing Code. CMMC § 13-30.

19.   If the disabled household is unlicensed, then it is classified as a Group Home. CMMC § 13-6.   Once deemed a Group Home, the City subjects the Group Home household to a discriminatory occupancy limitation capping the number of disabled persons who may occupy a dwelling – regardless of dwelling size or configuration – at a number far less than permitted in any other dwelling (occupied by nondisabled persons) under the Uniform Housing Code. CMMC § 13-30.   The City also imposes burdensome permitting requirements on Group Home households and discriminatory abatement procedures.  CMMC §§ 13-311, 13-312.

20.   The Zoning Code subdivides Group Home households into two groups – households comprised of disabled persons in general and households comprised of disabled persons in recovery.  If a disabled household is classified as a Sober

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 5 -
**COMPLAINT**

Living Home, CMMC § 13-6, then it is subject to the discriminatory limitation imposed on RCF and Group Homes and much more.   CMMC §§ 13-30, 13-311, 13-312.   The City also imposes additional, draconian permitting requirements on Sober Living Homes and enforces a separation requirement limiting the number of Sober Living Homes that may exist within an R-1 district.

### 3.  The City's Single-Family Dwelling (R-1) District

21.    Among its residential districts, the City's R-1 districts are the most exclusive and privileged neighborhoods.  To protect those neighborhoods from infiltration by undesirable persons, the Zoning Code excludes or limits certain households based on the disability of persons living in those households.

### 4.  The City's High Density and Medium Density R2 Districts

22.    The City is also home to many less exclusive R2 Districts, home to multi-family dwellings.  Under the City's Zoning Code, Table 13-30, R2 Districts (medium density and high density) may contain Common Interest Developments, Small Boarding houses, Residential care facilities (6 or fewer), Residential service facilities (6 or fewer), as well as single family dwellings.

23.    Additionally, residents may apply for conditional use permits (CUP), in order to operate Mobile Home Parks, Boardinghouses (large), Residential care facilities (7 or more persons – not State licensed), and Referral facilities (Subject to the requirements of Section 13-32.2 Referral facility), in R2 Districts.

### 5.  Group Homes in the R2-MD, R2-HD and R3 Residential Zones

24.    The Zoning Code treats Group Homes in the R2-MD, R2-HD, and R3 Residential Zones, similarly to those in R-1 districts, however the Zoning Code also requires the application of conditional use permits in R2-MD, R2-HD, and R3 Residential Zones for the operation of a "group home, state-licensed residential care facility or state-licensed drug and alcohol treatment facility with seven (7) or more occupants, subject to certain conditions as outlined in CMMC § 13-323. Conditional use permits run with the land, and if granted would allow a group home to operate in perpetuity on the parcel of land it was granted.

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 6 -
**COMPLAINT**

25.    CMMC § 13-323(b), one of the additional conditions placed on applicants for CUPs for group homes with more than seven individuals, states:

(b)    The group home, residential care facility or state-licensed drug and alcohol treatment facility is at least six-hundred fifty (650) feet from any property, as defined in section 13-321, that contains a group home, sober living home or state-licensed drug and alcohol treatment facility, as measured from the property line, unless the reviewing authority determines that such location will not result in an over-concentration of similar uses

**C. The Official Policy of the City of Costa Mesa**

26.    It is the official policy of the City of Costa Mesa to eradicate households comprised of disabled persons in recovery from the City's R-1 and R-2 districts.  This official policy aims to evict disabled persons in recovery from dwellings located in R-1 and R-2 districts and to prohibit the infiltration of new disabled persons in recovery into those districts.   The objective of this official policy is the displacement or disruption of the housing available to these disabled persons.

27.    The City's official policy of discrimination is embodied in the legislative enactments of the Costa Mesa City Council, including Ordinances 13-04, 14-13, 15-06, and 15-11, the City Council's establishment and direction to the Neighborhood Improvement Task Force, the City Council's appropriation and funding for a City program established to target and harass dwellings occupied by persons in recovery, and the City Council's instruction to City employees, officers and officials to commit discriminatory acts in conformity with the City's official policy of discrimination against persons in recovery including but not limited to, during the assessment of reasonable accommodation requests, as well as during the assessment of CUPs and SUPs.

28.    It is the deliberate practice and custom of the City to engage in discrimination against persons in recovery.  This practice and custom are directed,

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

**COMPLAINT**

encouraged, condoned and ratified by the City Council.  The City Council charged the City Manager with the authority and responsibility for execution of this official policy.  Pursuant to the City's official policy of discrimination, the City converted the Neighborhood Improvement Task Force into a governmental body whose principal purpose is identifying and targeting disabled households for harassment by City employees and officers.  The City Manager and City Council devised the strategy to overhaul the City's nuisance ordinance for the express purpose of targeting households occupied by disabled persons in recovery with stiff fines and criminal penalties.

29.     As a group, the City's policy-makers – the City Council, City Manager, and employees acting under their direction –  conspired for the purpose of depriving, either directly or indirectly, a class of person, identified as disabled persons in recovery, of the equal protection of the laws, as further described below. Each had knowledge of the wrongs conspired to be done and had the power to aid in the prevention of those wrongs but neglected or refused to act.

30.     Each discriminatory or unconstitutional practice or action alleged in this complaint was committed pursuant to and in conformity with the City's official policy of discrimination against persons in recovery.

**D. The Road from Integration to Segregation, 2009-2013**

31.     For decades, households of persons in recovery existed in peace throughout Costa Mesa.  But local events in late 2009 eroded that tranquility as the group home controversy in neighboring Newport Beach grew more heated. Watching Newport Beach drive persons in recovery from its neighborhoods inspired a small but vocal group of Costa Mesa residents to agitate for adoption of the same discriminatory policy in their city.  Their protest grew more insistent in the wake of the federal district court's rulings in *Pacific Shores v. City of Newport Beach*, upholding Newport Beach's group home ordinance.  That ruling unleashed the forces underlying Costa Mesa's conduct in this case. Relying on the district court's ruling, Newport Beach closed its borders to any new group homes and

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

**COMPLAINT**

evicted more than half of the existing sober living homes.  Costa Mesa residents feared that Newport Beach steered persons in recovery into their city. Whether right or wrong, opinion grew in Costa Mesa that Newport Beach's win was Costa Mesa's loss.

32.     The City's strategy, under councilmember Righeimer's direction, unfolded in four steps.   First, he encouraged voters to report their neighbors if they suspected the neighbors were a household of disabled persons in recovery. This was partly accomplished through his "Meet the Mayor" meetings held in neighborhoods that complained about the presence of sober housing.   Second, in September 2013, Righeimer pushed through an ordinance broadening the definition of nuisance for the express purpose of targeting dwellings that housed disabled persons in recovery. Armed with these new powers, the City formed a task force to target suspected sober living homes for raids by police or code enforcement officers. Third, in November 2013, Righeimer co-opted a voter campaign against persons in recovery.  He formed the Mayor's Preserve Our Neighborhoods Task Force, a vehicle to harness private prejudice against persons in recovery to bolster his re-election chances.

33.     Finally, in September 2014 Righeimer shepherded the City's new group home regulations, Ordinance 14-13, through the City Council.  That ordinance overhauled the City's zoning code for the sole purpose of driving sober living homes from Costa Mesa's R-1 neighborhoods.  The strategy worked.  On November 4, 2014, Righeimer won re-election, beating his challenger, Jay Humphrey, by only 47 votes, 7,524 to 7,477.

**E. The City Targets and Harasses Disabled Persons in Recovery Pursuant to Official City Policy.**

34.     And, as promised, the City escalated its campaign against persons in recovery pursuant to its official policy of discrimination. In November, 2015, the City passed Ordinance 15-11, establishing distance requirements for sober living homes.  One of the many tools the City uses to enforce its policy of discrimination,

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

**COMPLAINT**

is Ordinance 15-11, which requires that all group homes be at least 650 feet apart. The 650 feet requirement is measured by the property line of unlicensed sober living houses regardless of the number of residents; state licensed facilities for six and under, even though such facilities are required by state law to be treated as single family uses; and licensed substance abuse facilities for seven (7) or more persons.

35.    The City also counted as a group home or sober living home those dwellings that were located on a single parcel of land but contained two dwellings, even though the City's own definition of Group Home states, "A group home operated by a single operator or service provider (whether licensed or unlicensed) constitutes a single facility, whether the facility occupies (1) or more dwelling units." CMMC § 13-6.  Thus, two dwellings located on a single parcel of land, such as two multi-family dwellings is considered to be within 650 feet of each other, thus making it impossible for a single provider of sober living to obtain a CUP for both properties.  The result is the displacement of a protected class of persons under various federal and state civil rights acts.

36.    Ordinance No. 15-11 does not give any benefit to Group Homes or Sober Living Homes that were lawfully in existence prior to its enactment. Ordinance No. 15-11 specifically prohibits group homes and sober living homes from seeking status as a legal non-conforming use, even though housing and uses for non-disabled applicants are able to do so.

37.    Ordinance No. 14-13 redefined the definition of single housekeeping unit. The Ordinance specifically excluded Group Homes and Sober Living Homes from being included in the definition of single housekeeping unit, or even seeking recognition as a single housekeeping unit.

38.    Plaintiff SoCal, operates several group homes in Costa Mesa for individuals in recovery from alcohol and substance abuse.  SoCal operates facilities located at: (1) 208 Cecil Place ("Cecil Place"), Costa Mesa, CA (SL-15-0011); (2) 783 Hudson Avenue ("Hudson Avenue"), Costa Mesa, CA (SL-15-0010); (3) 175

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

**COMPLAINT**

East 21st Street ("East 21st Street"), Costa Mesa, CA (PA-16-18); (4) 157 Del Mar Avenue ("Del Mar"), Costa Mesa, CA.

39.    SoCal had quietly and successfully provided recovery services to the Costa Mesa at these four locations for years until it was swept up in drag-net of the City's official campaign against persons in recovery. For the first time, SoCal began to experience in Costa Mesa the kind of discrimination that had been taking place in Newport Beach for years.

40.    As of June, 2018, the City's own data, published on its website at [http://www.costamesaca.gov/city-hall/city-departments/development-services/community-improvement-division] under the link entitled "Group Homes That Have Closed," the City states that it has closed 56 group homes under the new Ordinance, totaling a reduction of 475 beds for the disabled in the City of Costa Mesa.

**1.  The City Targets SoCal's Street Group Homes for Closure**

*Cecil Place* **[R1 Zoning Designation – SL-15-0011]**

41.    208 Cecil Place is a five-bedroom single family home, located in the east side of Costa Mesa and has a R1 Zoning Designation.  There are two structures on the lot. The main house is 1552 square feet, and the secondary house is 900 square feet. The home has to garage parking spaces, and four open parking spaces. The home contains five bedrooms, with ten beds total, but only serves six men plus one house manager.  The property is surrounded by other homes with an R1 zoning designation.

42.    On November 14, 2016, the Costa Mesa Planning Commission held a Director's hearing regarding SoCal's Special Use Permit, SL-15-0011.  At the hearing, the Zoning Administrator denied SL-15-0010. During the hearing, SoCal's attorney made a verbal request for a Reasonable Accommodation to allow the facility to be within 650 square feet of the existing state-licensed facility, and to grandfather the facility as it existed when the City adopted Ordinance 14-13.

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 11 -

**COMPLAINT**

43. The Planning Commission scheduled the hearings for Cecil Place, SL-15-0011, Hudson Avenue, SL-15-0010; and 175 East 21st Street, PA-16-18, on October 9, 2017. Prior to the hearing, the City sent out a Notice, requesting information and opinions from local residents as to the approval/denial of the three pending SUP/CUP applications.

44. Many residents wrote to the City, voicing opposition to the approval of the CUP/SUP applications, and voicing their discriminatory animus against sober individuals in recovery from substance abuse.

45. For example, Laurence Kuhlman wrote on Sunday October 8, 2017:

Hello Isabell:

My name is Laurence Kuhlman and I'm a current homeowner in Costa Mesa. I am writing to voice my STRONG OPPOSITION to the following applications for Sober Living Homes being heard on Monday, October 9th;

Public Hearing #3-SL-15-0010

Public Hearing #4-SL-15-0011

Public Hearing #5-PA-16-18

The statistics in this OC Register article regarding crime rates in Costa Mesa only add to my concerns:

http://www.google.com/amp/www.ocregister.com/2017/05/21/is-there-a-linke-between-neighborhood-rehab-programs-and-petty-crime-in-califoria/amp/

Although it may be hard to prove a direct link between sober living homes and crimes rates...it's hard to argue that these high density sober living homes would not have a negative impact.

46. The application of perceived negative effects, such as petty crime, littering, and lack of parking, to sober living homes, is a constant theme repeated by the public at City Council and Planning Commission hearings, and it is a theme that

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 12 -
**COMPLAINT**

has been adopted by the City Planning Commission, Zoning Director, and City Council, throughout every single SUP/CUP application for sober living homes or residential treatment facilities that has been reviewed by the City.

47.    Mr. Kuhlmann's email is emblematic of the discriminatory animus of the residents of Costa Mesa, and residents' willingness to scape goat sober living homes for any perceived problems in the local community, regardless of whether any causal link exists between the SLH at issue.

48.    Pursuant to the City's new rules and regulations, SoCal submitted CUP/SUP applications to the City for all four above listed homes were denied by the City of Costa Mesa.

49.    In the Director's Hearing Report, publishing on August 16, 2016 in anticipation of the November 14, 2016 Director's Hearing, the Director stated:

> There is an existing state-licensed alcoholism and drug abuse recovery treatment facility with six or fewer residents located at 175 Virginia Place within 650 feet (638 feet) from the subject property.  The facility located at 175 Virginia Place is operated by Northbound Treatment Services and provides residential detoxification services to a co-ed target population.

50.    At the hearing, on November 14, 2016, SoCal, by and through its attorney, "made a verbal request to allow this facility to be within 650 feet of the existing state licensed facility; and to 'grandfather" the facility as it was existing when the City adopted Ordinance 14-11 and 14-13.  In a letter addressed to SoCal's attorney, dated December 5, 2016, the City attorney acknowledged SoCal's reasonable accommodation request, but refused to assess the request, stating, "the Procedure to request a reasonable accommodation is set forth in Title 13, Article 15, and Section 13.200.60 et seq. of the Costa Mesa Municipal Code.  Please submit a separate written request pursuant to Article 15 to the Director of Development Services/Economic Development that is in compliance with these requirements, so the City can properly evaluate the request."  Thereafter, the City refused to evaluate SoCal's reasonable accommodation request.

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 13 -
**COMPLAINT**

51.     Regardless, the making a reasonable accommodation request of the City of Costa Mesa as to Ordinance 14-13 (or 15-11), is a futile endeavor.  The City has consistently denied each and every reasonable accommodation request made by sober living home and residential treatment center operators. The basis for each denial always culminates with the City stating, "given the surplus of sober living homes in Costa Mesa, the accommodation is not necessary in order to afford an equal opportunity find housing in a dwelling in Costa Mesa."

52.     After the Director's Hearing on November 14, 2016, at which the City denied SL-15-0010 based on Ordinance 14-13 and the existence of a state-licensed facility 638 feet away, the SoCal proposed that SoCal provide the City with an alternate analysis of the measurement between Cecil Place and the existing state-licensed facility, by November 28, 2016.  SoCal provided the alternate measurement analysis on November 28, 2016, using the "walk off distance" approach, rather than the City's "bird's eye view" approach.  Using the walk off distance approach, SoCal was able to demonstrate that the distance a pedestrian would walk from Cecil Place to the nearest state-license facility, was 892 feet.  The City refused to use SoCal's alternate method of calculating distance between homes.

53.     Instead, the City requested that SoCal submit a "signed, stamped report, prepared by a civil engineer that sets forth the methodologies employed in the survey, as well as the points on the properties from which these measurements were taken," by December 14, 2016.

54.     On April 27, 2017, the Zoning Administrator issued a written decision, denying the SUP, stating that:

    a. "There is an existing facility serving six residents at 175 Virginia Place, that is approximately 638 feet from the subject property;"

    b. "A written request for a Reasonable Accommodation was never submitted;"

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 14 -
**COMPLAINT**

c. "There is no provision grandfathering exiting group homes. In fact, the CMMC specifically indicates that existing group homes needed to comply with the new regulations within one year."

55.    In May of 2017, the City Council adopted Ordinance No. 17-05, which changed the review process for SUPs.

56.    On May 3, 2017, the applicant appealed the denial of the Zoning Director to the Planning Commission.  The Appeal of the Zoning Director's denial was scheduled for a duly noticed public hearing on October 9, 2017. At the meeting on October 9, 2017, the Planning Commission conducted a noticed public hearing and voted again to deny the application.

57.    At the October 9, 2017 hearing, the Planning Commission invited members of the public to comment.

One unidentified woman stated:

I am asking for a denial due to the fact that it is an unlicensed facility and we do have many new families in our area with young children.  That particular dwelling is a duplex type facility, and there are residential single-family homes kind of stick amongst those. The amount of cars, the impact just as the other facility in the other area.  Unbelievable amount of impact This is probably more personal than anything, going to Stater Brothers on a Sunday morning, the impact of residential facilities unloading at the grocery store… I mean, the amount of impact that residential facilities in our area, whether they're licensed or unlicensed,
I feel as a resident, a tax paying resident, as a long-term resident, we should have a say and whether these are acceptable, and I feel very strongly that this should be denied.

(PC Hearing, October 9, 2017, p. 08:25 – 09:21.)

This individual did not explain the correlation between young children living in the neighborhood and her desire for the City to deny SL-1500, nor did she provide any evidence that the six residents of Cecil Place have or have any deleterious effects on the neighborhood, other than an express frustration with seeing residents of "residential care facilities" "unloading at the grocery store."

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 15 -
**COMPLAINT**

58.     Another resident, a neighbor named Harry Lewellyn, who lives across the street from Cecil Place, and has since 1994, made a long statement, comparing all of the residents of Cecil Place to convicted felons, drug dealers and criminals. Notably, there is no evidence that any of the residents of Cecil Place are convicted felons, criminals, or drug dealers.

Mr. Lewellyn stated:

> The information that I'm delivering is not from a basis of conjecture, hearsay, rumor, or what I believe. It is coming from you from a perspective of a drug addict, a drug dealer, a convicted time serving forgery felon, my brother. He referred to his time at the penitentiary as attending crime U. What he did not know he learned, and what he knew he taught. To me, that confirms why recidivism if I get that word right, rate is typically greater than 80 percent. He tells me criminals have a way to beat everything. Everything. Drug tests. Being handicap tests. He shoots up under his tongue, so he doesn't have tracks in his arm. How to commit crimes of opportunity to steal your phone out of your unlocked car, your nearby unlocked car, nearby to this facility is a no brainer for them. They have ways to make rehabilitation facility supervisors believe that they're following the rules. This guy brags… he brags about being a cook for the red and white. That's in talk for making meth for the Hell's Angels. When I'm asked how he blew up a Co2 cylinder and damaged his face, jawbone, lost teeth, and almost blinded him, he bragged that it was a bomb for the red and white. This man is evil, while living at home with our 94-year-old mother, he was arrested for possession and drug dealing. The arresting officer confided in me that they Garden Grove Police Department not known that my mother was in there, it would have been a full-on SWAP, break down the door, surround the facility bust. Thank you, Garden Grove Police Department. Does the City of Costa Mesa screen such occupants for the offending… the drug offenses, the criminal offenses they've made? What if a sex offender criminal is put in one of those facilities? To be politely [sic] correct, I would be scared brown S-word less if I had children living in the near by facility. The occupants-…

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 16 -
**COMPLAINT**

Mr. Lewellyn succinctly embodies the discriminatory animus of many residents who have spoke out against CUP and SUP applications at Planning Commission and City Council Hearings in the past.  Mr. Lewellyn has lived next to 208 Cecil Place for more than 20 years.  The SLH has been in operating since 2015.  Yet Mr. Lewellyn does not provide any evidence whatsoever, that he has personally experienced any problems, criminal or otherwise, which can be attributed to the residents of Cecil Place.  He does not state that he has ever called the police on the residents of Cecil Place. In fact, Mr. Lewellyn provides the Planning Commission with literally no information whatsoever about the residents of Cecil Place.  Mr. Lewellyn simply rambles on about the evils of drug addicts and criminals, generally.   This is very common of public comments made during Planning Commission and City Council Hearings for CUP/SUP Appeals and applications.

59.     SoCal appealed the Planning Commission's October 9, 2017 decision, to the City Council.   On February 20, 2018, the City Council held a noticed public hearing and voted 5-0, upholding the Planning Commission's prior denial.  The video footage for this hearing was not made available to public by the City of Costa Mesa. Every other City Council meeting in 2018 was recorded and a video of the meeting posted, save for the February 20, 2018 meeting.

60.     The City adopted Resolution 18-11, "Upholding the Planning Commission's Denial of An Appeal Regarding the Denial of Special Use Permit SL-15-0011."

***783 Hudson Avenue* [R1 Zoning Designation – SL-15-0010]**

61.     The Zoning Director's hearing for SL-15-0010, 783 Hudson Avenue, was also heard on November 14, 2016. City refused to analyze SoCal's reasonable accommodation request as to Hudson Avenue for the same reasons the City refused to analyze the reasonable accommodation request as to Cecil Place.

62.     Given that PA-16-18, SL-15-0011 and SL-15-0010 were filed on or about the same time, the City scheduled all hearings for both SUPs on the same dates, including the initial Director's Hearing on November 14, 2016, the appeals to

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

**COMPLAINT**

the Planning Commission which were heard on October 9, 2017, and the appeals to the City Council, which were heard on February 20, 2018.

63.    783 Hudson Avenue, Costa Mesa, CA is a four-bedroom single family home located in central Costa Mesa and surrounded by other R1 designated homes. This sober living home was exiting when Ordinance 14-13 became effective.

64.    The City denied SL-15-0010 on November 14, 2016, citing Ordinance 14-13, and stating "There is an existing state licensed alcoholism and drug abuse recovery treatment facility with six or fewer residents located at 13741 Olympic Avenue, within 650 feet (409) feet from the subject property.  The facility located at 13741 Olympic Avenue is operated by Clean Path Recovery and provides residential detoxification services to a co-ed target population." (Planning Commission Director Hearing Report, 11-14-16.)

65.    Prior to the October 9, 2017 Planning Commission Hearing, the City encouraged local residents to submit letters and emails to the City, in support or opposition to SUP-15-0011. Just as with SUP-15-0011 and PA-16-18, many local residents wrote to the City voicing perceived effects of the home, without providing any substantive or material evidence that the presence of the sober individuals residing at 783 Hudson actually had any detrimental effect on the neighborhood.

66.    Generally, the residents wrote to the City stating that they were in fear for their safety and the safety of their children and attributed criminal activity in Costa Mesa generally to individuals in recovery, and thus, to the residents of 783 Hudson Avenue.

67.    One resident, Jessica Lawrence, stated during the public comment portion of the October 9, 2017 hearing:

> There's a lot of small kids in our neighborhood, we don't even want them walking around the street because of the people that are going to be outside. I really can't control your neighbors, I know you can't control the people that move in next door to you. We want to be a community and we just want everyone to be respectful of their neighbors and the children that are riding bikes all around, we want it to stay that way.

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

**COMPLAINT**

(Planning Commission Hearing, 10-09-17, at 18:16-25.)

68.     Another resident, Julie Patterson, took the podium to voice her opposition to SL-15-0010 on the basis of crime and homelessness generally, in Costa Mesa, but did not provide any information connecting these perceived effects to the residents of the Hudson Avenue home.  Ms. Patterson stated:

> Hi, my name is Julie Patterson. I'm an East Side Costa Mesa resident and I'd like to address the issue with the fall out of the people that come out of sober living homes, and they end up on our streets. We're commercial property owners on the East Side of Costa Mesa off of 17 Street, and we have had several people breaking the locks off of the dumpsters that are locked. They take these screw drivers and unlock the mechanisms, break in. We've witnessed it like almost every other weekend they come in, they defecate, they do their thing with the needles, they have sex, they leave their condoms, and we as commercial property owners have to put up with this?
> What's the deal McNeil? Seriously, what's the deal, McNeil? You're just going to keep bring these people in? And what about commercial property owners that pay taxes? What kind of cause and effect. There's a cause and effect to these things. That's all. I just want you guys to know what's really happening behind the scenes.

(Planning Commission Hearing, 10-09-17, at 20:12-25 – 21:01-16.)

69.     Other residents of Costa Mesa took the podium to voice their opposition to SL-15-0010, who don't even live near the home, but traveled to see it and collect evidence for the October 9, 2017 hearing.   This is quite common at Costa Mesa Planning Commission and City Council hearings, and the City does not question the residents to discern whether they live near the subject the property. One unidentified female stated:

> So, I also saw that there were a lot of emails about this particular address, I hope that you all read those. And I hope that some of you went over there, because this is a great neighborhood, and I hope you actually looked around. And I don't know I'm missing something, but I don't see the other houses on this map and this gentleman- … Okay. So I thought I would be over there for what, 15 minutes? I was over

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 19 -
**COMPLAINT**

there the other day for almost 2 hours listening to the residents and watching the action. Watching the coming and going. And I don't know if you saw it, but the picture that folks put up of the house that you're addressing today, did you see the cones in front of the house? Put that picture back up. Those residents are so impacted that they have to put cones out in front of their house because of the sober living. Not just the sober living but over parking in the area but the sober homes are particularly impacting this. And the one on Olympic, apparently there's a lot of calls for service to these homes, and the one on Olympic just had an overdose last weekend, and the house here on Canadian... I mean, this is too much for this little neighborhood, it's like a little island. It's surrounded. And you know the sober living home operators almost target neighborhoods like this. There's a lot of elderly people. You put your house next to an elderly person and they're not going to complain. They don't complain at the doctor's office, they hardly every complain about their neighbors. I just feel like this neighborhood was targeted for a reason and there's another application for a house on Platt, another one on Roanoke. There's a lot going on in this neighborhood, so I respectfully request that you deny this application, and I really applaud the neighbors that came up and stepped forward, thank you.

(Planning Commission Hearing, 10-09-17, at 21:19-25 – 22:01; 22:04 – 23:13.)

70.    Notably, this resident does not live near the Hudson Avenue home but traveled to the location in order to investigate a home that she had no first-hand experience with until she was "called to action" by the City of Costa Mesa.  This resident did not provide any substantive information about the residents of Hudson Avenue, and even went so far as to accuse SoCal of "targeting the elderly" for placement of SLHs, because "they don't complaint."

71.    After this resident sat down, there was a loud round of applause from the audience, to which Costa Mesa Planning Commissioner Stephan Adranian responded: "Let's not clap."

72.    Another resident, an actual neighbor that lives across the street from Hudson Avenue, stated that she did not even know that a SLH was at 783 Hudson

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 20 -
COMPLAINT

Avenue, until she received the City's Notice regarding the Planning Commission hearing.  This resident stated, in relevant part:

> I've live in this area for almost 10 years and it's a quiet neighborhood and I have 2 small children. But lately I have been finding that there's needles on the ground. **My husband and I didn't even know there was a house for drugs and rehabs or whatever it is. We both thought it was somebody using and toss it in the grass**, so we picked it up because we have small children. He's going to be a teenager in a few years here. So**, what happened is I picked it up myself, my husband did too, and recently about 2 or 3 weeks ago, we picked up 2 cans of beers that was in a bag behind our bushes. We didn't expect it, so I just picked it up and put it in a trash can. Until we got this notice in the mail saying there's a sober living and they want to make that house as a living area for sober**. For me, I'm against it because like I said, we're a small neighborhood and we like it quietly and like to live their happily.

(Planning Commission Hearing, 10-09-17, at 23:06 -25; Emphasis Added.)

73.     On October 9, 2017, the Planning Commission upheld the Director's denial of SL-15-0010. During the Public Comment portion of the hearing, residents voiced their opposition to the City approving SL-15-0010.

74.     SoCal appealed this decision to the City Council, and the appeal was heard on February 20, 2018 from the.  In the City's February 16, 2018 Agenda Report, the City recommended upholding the Planning Commission's denial, stating:

> The subject sober living facility occupied by six adults is within 650 feet of a state-licensed drug and alcohol recovery facility that also serves six adults. The Planning Commission carefully considered the facts regarding this application, and after considering testimony from the applicant and members of the public, denied the applicant's appeal and denied the special use permit. Staff recommends that the City Council deny the appeal and uphold the decision of the Planning Commission.

**COMPLAINT**

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

75.     At the time the City began enforcing Ordinance 14-13 against SoCal's R1 homes, SoCal had been operating the Hudson Avenue home for several years without incident.

76.     As with past hearings, the City adopted the Public's discriminatory comments, and perceived effects of SLHs and individuals in recovery generally, in supporting their decision to vote to uphold the Planning Commission's denial of SL-15-0010.

77.     On February 20, 2018, the City adopted Resolution No. 18-10, "Upholding the Planning Commission's denial of SL-15-0010 to operate a SLH at 783 Hudson Avenue."

78.     Thereafter, the City began fining SoCal repeatedly throughout June 2018, for violation of CMMC §§ 13-26, 13-311; 20-12(ii).  The City fined SoCal $7,200 for various violations pursuant to the above code sections, in the month of June, 2018.

***175 East 21st Street* [R2 Zoning Designation – PA-16-18]**

79.     The Zoning Director's hearing for PA-16-18 was heard concurrently at all administrative hearings along with SL-15-0011 and SL-15-0010.  The decision-making process and outcome track those of SL-15-0011 and SL-15-0010.

80.     SoCal also submitted a Reasonable Accommodation request along with PA-16-18.

81.     That is, PA-16-18 was denied by the Zoning Director on November 14, 2016 citing to Ordinance No. 15-11. SoCal, appealed to the Planning Commission regarding both the denial of the RA request, as well as the denial of PA-16-18.

82.     On October 9, 2017 the Planning Commission upheld the Director's decision, citing to Ordinance 15-11.  SoCal then appealed to the City Council, which upheld the Planning Commission's decision.

83.     During the Planning Commission hearing and the City Council Appeal hearing, the City allowed the public to speak as to PA-16-18.

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 22 -
**COMPLAINT**

84.     As with all past applications, many familiar faces appeared (some neighbors and some non-neighbor residents), to voice opposition to PA-16-18.  As with past hearings, the public comment portion of the evening was hostile and discriminatory, and filled with discriminatory animus and perceived effects of "drug addicts and criminals," without any substantive reference to the residents of 175 East 21st Street.

85.     Notably, 175 East 21st Street was in operation when the City passed Ordinance 15-11.

86.     During public comments, one resident quoted the Mayor at the time, stating:

> And so, I also wanted to read a quote, printed by the OC Register quoting our Mayor of Costa Mesa stating that she understands it's directly… excuse me referencing the paragraph beforehand. That the result of petty crimes and the falling quality of life in neighborhoods, particularly where addition treatment facilities are concentrated. **That she understands it's directly related to the increase in recovery homes in our city**, which is one of the most recovery heavy cities in California. So, again I ask you to deny this request.

(Planning Commission Hearing, 10-09-17, at 18:21 – 19:07; Emphasis added.)

87.     The Planning Commission voted 5-0 to deny PA-16-18, citing Ordinance 15-11 and CMMC § 13-323.

88.      SoCal appealed to the City Council, and the appeal was heard on February 20, 2018.  The City Council, adopting the discriminatory animus of the public, and refusing to analyze the reasonable accommodation request in good faith (using the incorrect standard), voted to uphold the Planning Commission's denial of PA-16-18.

### *157 Del Mar Ave* **[R-1 SL-16-0001]**

89.     SoCal also submitted a SUP for 157 Del Mar Avenue, Costa Mesa CA.  On May 1, 2018, the City wrote to SoCal stating that the SUP application was not in compliance with a new Ordinance 17-05.  Based on non-compliance with Ordinance 17-05, the City denied SL-16-0001 without a hearing.

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 23 -
**COMPLAINT**

90.     Notably, when SoCal submitted SL-160001, Ordinance 17-05 was not in existence.  Ordinance 17-05 requires applicants of permits for SLHs comply with heightened standards not required of any other permit applicant in the City of Costa Mesa

**The objective, result and effect of the City's policy, including its group home ordinances, do not benefit disabled persons.**

91.      It is the acknowledged objective of the City's official policy of discrimination against persons in recovery to achieve the "displacement or disruption of the housing available to the handicapped."   An official policy with that objective does not benefit disabled persons.

92.     The City's official policy of discrimination against persons in recovery actually or predictably results in the eradication of sober living homes in the City's R-1 and R-2 districts.    An official policy with the result does not benefit disabled persons.

93.     By evicting disabled persons from their homes, the City renders them homeless and displaced, forcing them to search for alternative housing in a market that already under serves persons in recovery.   An official policy with that effect does not benefit disabled persons.

94.     Since 14-13 was enacted in 2016, the City has rid itself of 339 beds. Since 15-11, that number has risen to nearly 500 recovery beds that have been closed down permanently and removed from the City's borders.

**The City's Discriminatory Housing Practices**

95.     The City, acting alone and in concert with others, directly and through agents, officials, and employees, pursues a policy or practice of discrimination on the basis of disability and other unlawful conduct.  The City's policy or practice includes, but is not limited to, the commission of the following unlawful acts:

a.     Denying or otherwise making unavailable housing to disabled persons, including those for whom plaintiffs provide or seek to provide housing, because of disability;

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 24 -
**COMPLAINT**

b.      Discriminating in the terms, conditions, or privileges of sale or rental of housing by disabled persons, including those for whom plaintiffs provide or seek to provide housing, or in the provision of services or facilities in connection with housing, because of disability;

c.      Making, printing or publishing, or causing to be made, printed or published a statement in connection with the sale or rental of housing that indicates a limitation, preference or discrimination on the basis of disability;

d.      Restricting or attempting to restrict housing choice of disabled persons, including those for whom plaintiffs provide or seek to provide housing, because of disability;

e.      Perpetuating or tending to perpetuate segregated housing patterns based on disability;

f.      Discouraging the rental or purchase of housing because of disability;

g.      Communicating to persons that they would not be comfortable or compatible with existing residents of a community because of disability;

h.      Enforcing land use restrictions that preclude or restrict the sale or rental of housing because of disability;

i.      Threatening, intimidating and interfering with plaintiffs and disabled persons, including those for whom plaintiffs provide or seek to provide housing, in their enjoyment of a dwelling because of disability;

j.      Coercing plaintiffs to deny or limit dwellings to disabled persons because of disability;

k.      Assigning disabled persons, including those for whom plaintiffs provide or seek to provide housing, to certain neighborhoods because of disability;

l.      Providing different municipal services to disabled persons, including those for whom plaintiffs provide or seek to provide housing, because of disability;

**COMPLAINT**

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

m.      Evicting or threatening to evict disabled persons, including those for whom plaintiffs provide or seek to provide housing, because of disability;

n.      Failing to make reasonable accommodations in rules, policies and practices that may be necessary to afford disabled persons, including those for whom plaintiffs provide or seek to provide housing, an equal opportunity to use and enjoy a dwelling;

o.      Failing to affirmatively further fair housing in the administration and application of its zoning, building and life safety codes;

p.      Denying or limiting disabled persons, including those for whom plaintiffs provide or seek to provide housing, the opportunity to participate in or benefit from the supportive housing offered by group homes, including plaintiffs' dwellings;

q.      Using land use ordinances and methods of administering those ordinances for the purposes or with the effect of subjecting disabled persons, including those for whom plaintiffs provide or seek to provide housing, to discrimination on the basis of disability;

r.      Denying disabled persons, including those for whom plaintiffs provide or seek to provide housing, an opportunity to participate in a program in the most integrated setting appropriate to their needs;

s.      Denying disabled persons, including those for whom plaintiffs provide or seek to provide housing, an equal opportunity to participate in or benefit from services and programs equal to those of people without disabilities;

t.      Utilizing licensing and permit requirements to provide municipal services that are not equal as applied to disabled and nondisabled persons;

u.      Utilizing unequal requirements for benefits or services in order to deny disabled persons, including those for whom plaintiffs provide or seek to provide housing, enjoyment and access to those benefits or services as enjoyed by others;

**COMPLAINT**

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

v.      Aiding, abetting, inciting, compelling or coercing the doing of acts or practices in violation of federal and state fair housing laws;

w.      Discriminating through public land use practices, decisions, and authorizations because of disability, including the use of zoning laws that make housing opportunities unavailable;

x.      Retaliating against plaintiffs because of their exercise of their fair housing rights;

y.      Conspiring with others to violate the federal rights of disabled persons;

z.      Refusing or failing to prevent persons from violating the federal rights of disabled persons;

aa.     Failing to affirmatively further fair housing

bb.     Classifying housing for disabled persons for the purpose or with the effect of excluding them from certain neighborhood;

cc.     Infringing on the privacy rights of disabled persons; and,

dd.     Depriving disabled persons of the safety and security of their home from governmental intrusion.

96.     The City injured plaintiffs by committing each of these unlawful housing practices and discriminatory acts.  Accordingly, each plaintiff is an aggrieved person within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(i), the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3), 1986, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and related state laws.

**N.  Injuries**

97.     By reason of the City's unlawful acts and practices, plaintiffs, and each of them, have suffered violation of their federal statutory and constitutional rights, loss of the value, use and enjoyment of their property, loss of current and future income, and frustration of their mission and diversion of their limited resources, among other injuries.  The disabled persons housed by plaintiffs have suffered a violation of their federal and state civil rights and rights to privacy, which has injured plaintiffs.  Accordingly, each plaintiff is entitled to compensatory

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 27 -
**COMPLAINT**

damages.

98.    There now exists an actual controversy between the parties regarding the City's duties under federal and state civil rights laws.  Accordingly, each plaintiff is entitled to declaratory relief under their federal and state law claims including, but not limited to, 42 U.S.C. § 3613(c)(1), 42 U.S.C. § 1983, 42 U.S.C. § 12133, California Government Code § 12989.2, and the California Constitution, as well as Rule 57 of the Federal Rules of Civil Procedure.

99.    Unless enjoined, the City will continue to engage in the unlawful acts and the pattern or practice of discrimination described above.  Plaintiffs have no adequate remedy at law.  Plaintiffs are now suffering and will continue to suffer irreparable injury from the City's acts and the pattern or practice of discrimination unless relief is provided by this Court.  Accordingly, each plaintiff is entitled to injunctive relief under their federal and state law claims including, but not limited to, 42 U.S.C. § 3613(c)(1), 42 U.S.C. § 1983, and 42 U.S.C. § 12133, California Government Code § 12989.2, and the California Constitution, as well as Rule 65 of the Federal Rules of Civil Procedure.

## V.  CLAIMS FOR RELIEF
### A.  First Claim
### [Federal Fair Housing Act]

100.    Plaintiff realleges and incorporate herein by reference each preceding paragraph

101.    Defendant City of Costa Mesa injured plaintiffs by committing discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*

### B.  Second Claim
### [Americans with Disabilities Act]

102.    Plaintiff realleges and incorporate herein by reference each preceding paragraph.

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 28 -
COMPLAINT

103.    Defendant City of Costa Mesa injured plaintiffs by committing unlawful practices in violation of Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.*

### C.  Third Claim

### [Rehabilitation Act]

104.    Plaintiff realleges and incorporate herein by reference each preceding paragraph.

105.    Defendant City of Costa Mesa injured plaintiffs by committing unlawful practices in violation of Rehabilitation Act, 42 U.S.C. § 29 U.S.C. §794.

### D.  Fourth Claim

### [Civil Rights Act of 1871]

106.    Plaintiff realleges and incorporate by reference each of the preceding paragraphs of the complaint herein.

107.    Defendant City of Costa Mesa injured each plaintiff by conspiring to deprive, failing to stop the deprivation, or depriving them of equal protection of the laws and due process of law, including freedom of association, freedom from unlawful search and seizure, freedom from selective and discriminatory prosecution, and freedom from intrusion into their dwellings, as guaranteed under the First, Fourth and Fourteenth Amendments to the United States Constitution in violation of the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3) and 1986.

### E.  Fifth Claim

### [California Fair Employment and Housing Act]

108.    Plaintiff realleges and incorporate herein by reference each preceding paragraph.

109.    Defendant City of Costa Mesa injured each plaintiff by committing unlawful housing practices in violation of the California Fair Employment and Housing Act, Government Code §§ 12926, 12927, and 12955 *et seq.*

### F.  Sixth Claim

### [State Zoning Powers]

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 29 -
**COMPLAINT**

110.    Plaintiff realleges and incorporate herein by reference each preceding paragraph.

111.    Defendant City of Costa Mesa injured SoCal by discriminating in the use of the City's zoning powers, including its enactment of Ordinances 14-13, 15-11, 15-06, and 17-05 in violation of California Government Code §§ 11135 and 65008.

## VI.  PRAYER FOR RELIEF

Accordingly, plaintiff prays that the Court awards them the following relief:

1.    Declares that the City acted unlawfully under the Fair Housing Act, the Americans with Disabilities Act, Rehabilitation Act, and other federal and state laws as alleged herein;

2.    Declares that the City's enactment, administration, application, and enforcement of its zoning regulations violate the rights of plaintiffs and their residents under the Fair Housing Act, the Americans with Disabilities Act, Fourteenth Amendment, and other federal and state laws alleged herein;

3.    Enters a temporary restraining order, preliminary and permanent injunctions enjoining the City, its officers, employees, agents, attorneys and successors, and all persons in active concert or participating with any one of them from enforcing unlawful or discriminatory zoning regulations, and from taking actions that either directly or indirectly interfere in any way with plaintiffs' abilities to provide housing to groups of unrelated, disabled persons who are in recovery;

4.    Enters a temporary restraining order, preliminary and permanent injunctions enjoining the City from harassing any plaintiff, including the institution of any abatement or enforcement proceedings against any plaintiff;

5.    Enters a temporary restraining order, preliminary and permanent injunction enjoining the City, its officers, employees, agents, attorneys and successors, and all persons in active concert or participating with any of them from interfering with the operation of any dwelling owned or operated by plaintiffs as a

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 30 -
**COMPLAINT**

1  dwelling for persons in recovery, and interfering in any way with the right of

2  plaintiffs' residents to reside in those dwellings;

3           6.     Awards compensatory damages;

4           7.     Awards reasonable costs and attorneys' fees; and,

5           8.     Orders other such relief as the Court deems just and proper.

6                        **VII.   JURY DEMAND**

7        Plaintiff demands trial by jury.

8                              *   *   *

9  Dated: July 26, 2018                    ZFATY | BURNS

10

11                              */s/ Garrett M. Prybylo*
                                ISAAC R. ZFATY
12                              GARRETT M. PRYBYLO
                                Attorneys for Plaintiff SoCal Recovery, LLC
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ZFATY | BURNS
660 NEWPORT CENTER DRIVE
SUITE 470
NEWPORT BEACH
CALIFORNIA, 92660
(949) 398-8080

- 31 -
**COMPLAINT**